**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MARIE BARHOUMA, ) | CASE NO. 1:09-CV-1180 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.            ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | |
| ) | **MEMORANDUM OPINION** |
| Defendant. ) | **AND ORDER** |

Plaintiff Marie Barhouma challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423 *et seq.* (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the Commissioner.

1

## I.  PROCEDURAL HISTORY

Ms. Barhouma applied for DIB and SSI on August 11, 2005, alleging a period of disability commencing June 1, 1997.  The Commissioner denied her claim initially and on reconsideration.  Ms. Barhouma filed a timely request for an administrative hearing.

On March 11, 2008, Administrative Law Judge John Murdock ("ALJ") held a hearing on Ms. Barhouma's claims.  Ms. Barhouma and a vocational expert, Lynn Smith, ("VE") testified at the hearing.  At the hearing, Ms. Barhouma, through counsel, withdrew her application for SSI because she exceeded the financial criteria for such benefits.  (Tr. 22-24.)  On April 24, 2008, the ALJ found that Ms. Barhouma was not under a "disability" as defined by the Act at any time from June 1, 1997, the alleged onset date, through December 31, 2000, the date last insured.[1]

This decision became the final decision of the Commissioner when the Appeals Council denied further review.  Ms. Barhouma filed an appeal to this Court.

On appeal, Ms. Barhouma claims: (1) the ALJ failed to use appropriate standards in the evaluation of her fibromyalgia when determining the weight assigned to treating physicians, and (2) the ALJ's assessment of her RFC is not supported by substantial evidence.

---

[1] Although Ms. Barhouma filed a claim alleging a period of disability beginning on June 1, 1997, the ALJ determined that Ms. Barhouma only met the insured status requirements of sections 216(I) and 223(d) of the Social Security Act through December 31, 2000.  Specifically, the ALJ found that Ms. Barhouma's "earnings record show that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2000 ( . . . 'the date last insured')."  (Tr. at 10.)  Ms. Barhouma does not contest the ALJ's finding.

2

## II.  EVIDENCE

### A. Vocational and Activities Evidence

Ms. Barhouma was 37 years old at the time her insured status expired on December 31, 2000.  (Tr. 28.)  She completed a high school general education development (GED) diploma. (Tr. 28.)  Her past work experience included work as a secretary in a hospital and a cashier for a convenience food mart. (Tr. 105.)  According to the vocational expert, these jobs involved either sedentary or light exertion. (Tr. 45-46.)

At the administrative hearing, Lynn Smith, a vocational expert, considered job possibilities for an individual with the same age, education, and work experience as Ms. Barhouma, with hypothetical restrictions for a range of sedentary work, that required no more than occasional balancing, stooping, kneeling, crouching, crawling and climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; no exposure to extreme heat; and no exposure to hazards, such as heights or moving machinery. (Tr. 48.)  In response to this hypothetical question, the vocational expert identified approximately 2,610,000 unskilled, sedentary jobs in the national economy as a lens inserter, charge account clerk, and sorter. (Tr. 48-49.)

### B. Medical Evidence prior to December 31, 2000, Ms. Barhouma's Date Last Insured

Ralph Kovach, M.D., an orthopedic specialist, treated Ms. Barhouma beginning in December 1999, through November 2000. (Tr. 216-18, 361-66, 377-80.)  Dr. Kovach referred Ms. Barhouma to physical therapy. (Tr. 222.)

On December 13, 1999, Ms. Barhouma began physical therapy with Marsha

Meeker, P.T., a physical therapist at NovaCare. (Tr. 218-23.) In January 2000, Ms. Barhouma complained of problems with sitting more than two hours. (Tr. 222.) On evaluation, Ms. Barhouma had normal 5/5 strength in her lower extremities, and normal ranges of trunk motion. (Tr. 222.) The physical therapist thought she had a good prognosis with compliance. (Tr. 222.) Ms. Barhouma stated that she was frustrated by her lack of progress. (Tr. 221.) Ms. Barhouma stated that she felt best when walking or doing extension exercises, and that sitting and flexion caused an increase in her radicular symptoms. (Tr. 221.) She had good deep tendon reflexes. (Tr. 221.) Her symptoms were presenting like lumbar disc herniation. (Tr. 221.)

In February 2000, the physical therapist reiterated her impression that Ms. Barhouma's symptoms were presenting like a lumbar disc problem, and that she got relief from extension exercises, but otherwise made little progress with physical therapy. (Tr. 218.) On April 17, 2000, the physical therapist reported that Ms. Barhouma had been diagnosed with fibromyalgia about one year earlier, and had attended seven physical therapy sessions. (Tr. 223.)

**C. Medical Evidence after December 31, 2000, Ms. Barhouma's Date Last Insured**

On August 8, 2001, Ms. Barhouma started seeing Lisa P. Iannuzzi, M.D., a rheumatology specialist. (Tr. 214.) Ms. Barhouma told Dr. Iannuzzi that she had fibromyalgia since early 1997. (Tr. 214). Dr. Iannuzzi reported that Ms. Barhouma had been treated by Dr. Kovach, an orthopedic specialist. (Tr. 214.) Ms. Barhouma told Dr. Iannuzzi that she had no pain in her hands or lower back, and occasional neck pain. (Tr. 214.) She had physical therapy for about one year, and had normal episodes

4

lasting one or two weeks. (Tr. 214.)

Ms. Barhouma continued to see Dr. Kovach in 2001, 2002, and 2003, for prescription refills of Naprosyn and Darvocet. (Tr. 215, 360, 367-76.)

On August 30, 2005, Dr. Iannuzzi reported that she had first seen Ms. Barhouma in August 2001, and diagnosed fibromyalgia since 1997, as well as recurrent right trochanter bursitis, depression, chronic fatigue, and hypothyroidism. (Tr. 202-03.) Dr. Iannuzzi described Ms. Barhouma as having generalized myalgias and arthralgias since 1997, and recurrent right thigh pain, treated with Darvocet. (Tr. 203.) According to Dr. Iannuzzi, Ms. Barhouma had multiple trigger points, and all of her joints were normal on examination. (Tr. 203.) Her laboratory tests also were normal. (Tr. 203.) Her treatment recommendation was to maintain Ms. Barhouma on medication and to try to get her to walk 30 minutes daily. (Tr. 203.) Ms. Barhouma's medications included Prozac, Darvocet, Motrin, and Synthroid. (Tr. 204.) Dr. Iannuzzi opined that Ms. Barhouma was limited to sedentary work due to chronic fatigue, and 1/2 to 3/4 of the time she could not do any significant lifting, pushing, or standing due to chronic lower extremity pain. (Tr. 204.)

On September 14, 2005, David V. House, Ph.D., a psychologist, examined Ms. Barhouma and evaluated her mental condition. (Tr. 225-30.) Dr. House found Ms. Barhouma had a moderate limitation on concentration and attention due to depression, but her ability to understand and follow directions was not limited. (Tr. 229.) She had a moderate limitation of her ability to withstand stress or pressure, and a mild limitation of her ability to relate to others and deal with the general public. (Tr. 229.) Dr. House diagnosed a mood disorder and psychological factors affecting her physical condition,

5

with depression exacerbating her pain. (Tr. 229.)

On October 14, 2005, Carl Tishler, Ph.D., a state agency psychologist, reviewed Ms. Barhouma's medical records, assessed her mental functioning, and found insufficient evidence of a mental impairment prior to the date last insured. (Tr. 256-69.) Specifically, Dr. Tishler noted that Ms. Barhouma's insured status expired on December 31, 2000, and that the record did not contain evidence for any psychiatric impairment prior to that date. (Tr. 268.) For the period from August 1, 2001 and after, Dr. Tishler relied on the 2005 consultative psychologist's examination (Tr. 254), and found, at most, moderate restrictions in concentration, but otherwise only mild limits in Ms. Barhouma's activities and social functioning. (Tr. 249.)

On January 4, 2006, Alice Chambly, Psy.D., reviewed the medical records and affirmed Dr. Tishler's assessment as written. (Tr. 254.)

On October 21, 2005, Anton Freihofner, M.D., a state agency physician, reviewed Ms. Barhouma's medical records and assessed her functioning, noting a date last insured of December 31, 2000. (Tr. 274-81.) Dr. Freihofner found Ms. Barhouma could perform medium work. (Tr. 274-80.)

On January 4, 2006, Teresita Cruz, M.D., a state agency physician, reviewed the medical records and affirmed Dr. Freihofner's assessment as written. (Tr. 281.)

On February 28, 2006, Cyril Marshall, M.D., assessed Ms. Barhouma's functioning and found she could lift up to ten pounds occasionally and five pounds frequently, could stand and walk for up to two hours, and sit for up to eight hours. (Tr. 286.) The doctor limited her abilities to perform postural limitations, and also her exposure to environmental hazards and pollutants. (Tr. 287.) The doctor attached

6

treatment records from 2004 and 2005. (Tr. 290-302.)

In October 2006, Ms. Barhouma met with a social worker, Marian Myers, regarding her mental condition. (Tr. 314-21.)  Ms. Barhouma described depressive symptoms and family problems. (Tr. 314-21.)  She indicated her treatment goal was to reduce her symptoms of depression. (Tr. 320.)

Ms. Barhouma did not follow up with her next two appointments in November 2006 or January 2007, and her case was closed. (Tr. 322-23.)

On January 11, 2007, Dr. Iannuzzi assessed Ms. Barhouma's mental functioning. (Tr. 306-07.)  The doctor assessed good abilities: to follow work rules and to understand, remember, and carry out simple job instructions; to maintain her appearance; to behave in a stable manner; relate predictably; and to manage her funds and schedules. (Tr. 306-07.)  She had fair abilities in most other areas of intellectual functioning and making occupational, personal and social adjustments, but poor abilities to maintain attention and concentration, to respond to changes, to deal with the public, and to socialize. (Tr. 306-07.)

On the same date, January 11, 2007, Dr. Iannuzzi assessed Ms. Barhouma's physical functioning and found she could lift up to ten pounds occasionally, stand and walk for less than one hour, and sit for up to two to four hours. (Tr. 324.)  The doctor found Ms. Barhouma could not climb, balance, stoop, crouch, kneel or crawl, and could not be exposed to any environmental hazards or pollutants. (Tr. 325.)   Dr. Iannuzzi noted that Ms. Barhouma experienced severe pain. (Tr. 325.)

Two months later, on March 8, 2007, Dr. Iannuzzi again assessed Ms. Barhouma's functioning.  This time she found Ms. Barhouma could stand and walk for

one to two hours and sit for up to four to six hours. (Tr. 326.) The doctor found Ms. Barhouma experienced moderate to severe pain. (Tr. 327.)

On December 1, 2006, to July 20, 2007, Dr. Marshall treated Ms. Barhouma for pain in multiple joints all over her body. (Tr. 328-36.) Ms. Barhouma had no swelling and no limitations in range of motion (Tr. 329-36), and appeared to be in good health. (Tr. 330-31.) On August 10, 2007, Ms. Barhouma underwent a magnetic resonance imaging (MRI) scan of her left leg, which showed a left hamstring injury and avulsion. (Tr. 338, 353.) An MRI scan of her lumbar spine was normal. (Tr. 339, 344, 355.)

From November 2007, to January 2008, Dr. Syed Akhtar-Zaidi saw Ms. Barhouma for pain management and prescribed medications for her symptoms. (Tr. 382-90.)

On March 3, 2008, Cynthia Taylor, D.O., examined Ms. Barhouma and found she had moderate spasms in her cervical and thoracic spine and along her sacroiliac joints. (Tr. 391.) She also had multiple tender points, consistent with fibromyalgia. (Tr. 391.) Dr. Taylor opined that Ms. Barhouma was totally and permanently disabled as a result of her fibromyalgia pain. (Tr. 391.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, which can

8

be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

A claimant's eligibility for DIB is determined by the last date that she was insured for such benefits. A claimant's insured status ceases in the last quarter in which she had twenty quarters of contribution into the Social Security system within a forty-quarter period. *See* 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b). *See, e.g., Schacht v. Barnhart*, 2004 WL 2915310 at * 7, n.1 (D.Conn. Dec. 17, 2004) ("The Commissioner determines eligibility for DIB by counting the number of quarters per year a person works during a specific time period prior to the onset of the disability. Specifically, in order to be eligible for DIB the claimant must have twenty quarters of coverage in the forty-quarter period extending to the quarter in which the disability is alleged to have begun. *See* 20 C.F.R. § 404.130(b) .").

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the

claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ found that Ms. Barhouma met the insured status requirements of the Act on December 31, 2000.  He found that through the date last insured, Ms. Barhouma had the severe impairments of affective mood disorder, fibromyalgia, and disorder of the back, discogenic and degenerative.  However, she did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

The ALJ determined that Ms. Barhouma had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that she can occasionally balance, stoop, kneel, crouch, crawl, and do other climbing, but is restricted from climbing ropes, ladders, and scaffolds, and from being exposed to extreme hot and to hazardous machinery and heights.

The ALJ ruled that Ms. Barhouma was unable to perform past relevant work, but through the date last insured, jobs existed in significant numbers in the national economy that she could have performed.  Thus, the ALJ concluded that Ms. Barhouma was not under a disability as defined in the Act at any time from June 1, 1997 through December 31, 2000.

## V.  STANDARD OF REVIEW

This Court's review is limited to determining whether substantial evidence exists in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  ANALYSIS

### A.  Evaluation of Fibromyalgia with regard to assigning weight to treating physicians

Ms. Barhouma asserts that the ALJ failed to employ appropriate standards in evaluating her fibromyalgia and failed to give controlling weight to the opinions of her treating physicians, Drs. Lisa Iannuzzi, Cyril Marshall, and Cynthia Taylor.  Specifically, Ms. Barhouma argues that "the ALJ erroneously required objective medical evidence of disabling fibromyalgia where there are no conclusive, objective tests and failed to properly credit the Plaintiff's treating physicians' opinions."

It is well established in the Sixth Circuit that the opinion of a treating physician is generally entitled to more weight than that of a non-treating physician. *See* 20 C.F.R. §

404.1527(d)(2).  A treating physician's opinion is given deference, however, only when it is supported by objective clinical evidence.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  An ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Further, post-date last insured evidence is "outside the scope of inquiry." *Id.* at 1233.

With regard to the opinions of Drs. Marshall and Taylor, the ALJ in fact assigned significant weight to their opinions and cited them in support of the RFC finding.  (Tr. at 16-17.)   In addition, the ALJ need not have given either of these physician's opinions any weight as neither had any bearing on whether Ms. Barhouma was disabled during the period where she was actually eligible for benefits – June 1, 1997 through December 31, 2009.  Neither Dr. Marshall nor Dr. Taylor treated Ms. Barhouma prior to the date she was last insured, December 31, 2000.    This post-date last insured evidence simply has no bearing on whether Ms. Barhouma was disabled as explained in more detail in Section VI.B of this Memorandum Order and Opinion *infra*.

With regard to Dr. Iannuzzi's opinion, the ALJ did assign limited weight to Dr. Iannuzzi.  Ms. Barhouma makes much of the fact that a diagnosis of fibromyalgia does not readily lend itself to objective medical verification and, thus the ALJ "erroneously required objective medical evidence of disabling fibromyalgia where there are no conclusive, objective tests and failed to properly credit Plaintiff's treating physicians' opinions," including Dr. Iannuzzi.

However, the ALJ did not assign limited weight to Dr. Iannuzzi's opinion based upon a lack of objective medical evidence as Ms. Barhouma asserts.  Rather, the ALJ

very clearly stated that Dr. Iannuzzi's opinion was contradictory.  (Tr. at 17.) Specifically, the ALJ cites the fact that Dr. Iannuzzi promoted stricter limitations to Ms. Barhouma's sit/stand/walk functions than found in sedentary work, but yet also found that she could perform sedentary work.  (*See* Tr. at 17.)   Further, Dr. Iannuzzi's medical source statements provided contradictory information from statement to statement.  For example, in a January 11, 2007 statement, Dr. Iannuzzi opined that Ms. Barhouma could sit for only two to four hours during an eight hour workday, could reach occasionally, and her pain was "severe."  (Tr. at 324-25.)  Yet, less than two months later, in a March 8, 2007 statement, Dr. Iannuzzi opined that Ms. Barhouma could sit for four to six hours during an eight hour workday, could reach rarely or not at all,  and her pain was "moderate to severe."  (Tr. at 328-29.)

In addition, the ALJ stated that Dr. Iannuzzi's opinion "failed to conform to the medical evidence as demonstrated by the contrast between her opinion and that of the remaining doctors."  The ALJ pointed to the fact that Dr. Iannuzzi's recommended restrictions were not endorsed by the other treating physicians.  (*See* Tr. at 17.)  For example, Dr. Iannuzzi opined that Ms. Barhouma was limited in her sitting ability, whereas Dr. Marshall opined that Ms. Barhouma could sit for an entire eight hour workday.  (*See* Tr. at 286, 324, and 328.)

Moreover, Dr. Iannuzzi did not begin treating Ms. Barhouma until six months after the date last insured and did not opine regarding Ms. Barhouma's physical abilities until nearly four and half years after this date.  Like the opinions of Drs. Marshall and Taylor, this post-date last insured evidence simply has no bearing on whether Ms. Barhouma was disabled during the relevant time period.

13

Therefore, Ms. Barhouma's assertion that the ALJ erroneously failed to give controlling weight to her treating physicians is without merit.

### B. Residual Functional Capacity

Ms. Barhouma next asserts that the ALJ's assessment of her residual functional capacity is not supported by substantial evidence.  Ms. Barhouma repeats the arguments made with regard to the ALJ's reliance, or lack thereof, on the opinions of Drs. Marshall, Taylor, and Iannuzzi.

Ms. Barhouma asserts that the ALJ failed to address Dr. Taylor's opinion that Ms. Barhouma was disabled, Dr. Marshall's opinion that Ms. Barhouma only had occasional ability to reach, handle, push, pull, and perform fine and gross manipulation, and the opinions of Drs. House and Iannuzzi that Ms. Barhouma suffered what Ms. Barhouma terms "profound" mental limitations.  To the extent that the ALJ's failure to address these opinions was in error, such error was harmless because this medical evidence is not relevant to Ms. Barhouma's limitations prior to the expiration of her insured status.

"Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir .2004).)  In fact, record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting that evidence of a medical condition diagnosed after the date last insured was only "minimally probative" of claimant's condition during the insured period).  Moreover, evidence of a claimant's post-date last insured condition, to the extent that it relates back, is relevant only if it is reflective of a claimant's limitations prior

14

to the date last insured, rather than merely his impairments or condition prior to this date. *See* 20 C.F.R. § 416.945(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is the most you can still do despite your limitations."); *see also Higgs*, 880 F.2d at 863 ("The mere diagnosis . . ., of course, says nothing about the severity of the condition.").

Ms. Barhouma argues that the ALJ failed to address Dr. Taylor's opinion that Ms. Barhouma was disabled.  However, a finding that an individual is "disabled" or "unable to work," is an administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(e); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Stiltner v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 685, 689 (6th Cir. 2007) ("As an initial matter, we note that the determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.").  Moreover, Dr. Taylor opined that Ms. Barhouma was disabled on March 3, 2008 over seven years after the date last insured and there is no indication that this statement related back to a date prior to December 31, 2000.  (Tr. 359.)

Ms. Barhouma next asserts that the ALJ failed to address Dr. Marshall's opinion that Ms. Barhouma only had an occasional ability to reach, handle, push, pull, and perform fine and gross manipulation.  (See Tr. at 289.)  However, Dr. Marshall's opinion that Ms. Barhouma had these limited abilities was made on February 28, 2006, over five years after the date last insured.  Dr. Marshall does not assert or even imply that these limitations existed during the eligible period.  Thus, the limitations do not relate back in any way.

Ms. Barhouma also argues that the ALJ failed to impose a limitation regarding Ms. Barhouma's moderate degree of restriction in concentration when determining her residual functional capacity.  Ms. Barhouma further argues that the medical evidence provided by Drs. House and Iannuzzi "proves the existence of more profound restrictions," but fails to specify exactly what those restrictions are.  The existence of a restriction in concentration, as well as the medical evidence of Drs. House and Iannuzzi that Ms. Barhouma cites in support of "more profound restrictions" did not arise until at least four and half years after the date last insured.  Moreover, none of the doctors opined that any of the mental health limitations relate back prior to December 31, 2000, much less that Ms. Barhouma's mental health diagnosis relates back to that time.  Further, Ms. Barhouma reported no mental health problems nor received any treatment for such conditions prior to the date last insured.

As all of the medical evidence is dated significantly after the date last insured, none of limitations appear to relate back to prior to that date, and no evidence exists that any of the doctors who created these records had any contact with Ms. Barhouma prior to the date last insured, this evidence irrelevant to the issue of whether Ms. Barhouma was disabled prior to December 31, 2000, the date she was last insured.  Moreover, medical records indicate that during the period prior to December 31, 2001, Ms. Barhouma received very little treatment, had few abnormal findings, and was not limited in functioning by any of her physicians.  (Tr. 216-18, 221-23, 361-66, 377-80.)  Although, as a procedural matter, it would be appropriate for the ALJ to determine that the post-date last insured evidence lacks probative value because it does not relate back to the time period at issue, such error is harmless and remand is not warranted.

*See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-536 (6th Cir. 2001) (failure to reference treating physician's report harmless error where ALJ's opinion supported by substantial evidence.)

### VII.  DECISION

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED  and judgment is entered in favor of the defendant

IT IS SO ORDERED.


Date:  May 24, 2010                    s/ *Nancy A. Vecchiarelli*
                                       U.S. Magistrate Judge